*Attorney Grievance Commission of Maryland v. Edward Allen Malone,* Misc. Docket AG No. 47, September Term, 2020. Opinion by Biran, J.

**ATTORNEY DISCIPLINE – MISCONDUCT – APPLICATION OF THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION – LIMITED REMAND –** Respondent, Edward Allen Malone, was charged with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(a) and (b) (bar admission and disciplinary matters) and 8.4(a), (b), (c), and (d) (misconduct). In pretrial discovery, Mr. Malone asserted the Fifth Amendment privilege against self-incrimination in response to two of Bar Counsel's requests for production of documents, as well as in response to all questions Bar Counsel asked Mr. Malone at his deposition. Bar Counsel filed a motion *in limine* to preclude Mr. Malone from testifying at the evidentiary hearing on Bar Counsel's charges, and the hearing judge granted the motion. The hearing judge found that Mr. Malone violated the MLRPC, as alleged by Bar Counsel.

The Court of Appeals held that a civil litigant who invokes the Fifth Amendment privilege against self-incrimination in discovery is not forever precluded from waiving the privilege and testifying at trial or submitting substantive responses to discovery requests. When faced with a party's application to waive the privilege after previously invoking it (or an objection by an opposing party to a subsequent proposed waiver), the trial court should, in general, take a liberal view toward the request to waive the privilege. However, the trial court must be alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate, or gain an unfair strategic advantage over opposing parties. A trial court's response to a request to withdraw the privilege necessarily depends on the precise facts and circumstances of each case.

In this case, the hearing judge acted within his discretion by precluding Mr. Malone from testifying as to the alleged violations of the MLRPC. However, the balance of interests favored allowing Mr. Malone to testify concerning mitigating factors at the evidentiary hearing.

The Court of Appeals concluded that Mr. Malone violated Rules 8.1(a), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d). The Court ordered a limited remand to the circuit court to allow Mr. Malone to testify concerning mitigating factors. The Court deferred determination of the applicable aggravating and mitigating factors and the appropriate sanction for Mr. Malone's violations of the MLRPC, pending the proceedings on remand and further proceedings in the Court of Appeals.

Circuit Court for Anne Arundel County
Case No. C-02-CV-20-002203
Argued: October 6, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 47

September Term, 2020

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

EDWARD ALLEN MALONE

_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

_____

Opinion by Biran, J.

_____

Filed: January 31, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On November 20, 2020, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "Petition") alleging that Edward Allen Malone, Respondent, violated the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), as then enumerated[1]: 8.1(a) and (b) (bar admission and disciplinary matters), and 8.4(a), (b), (c), and (d) (misconduct).

In pretrial discovery, Mr. Malone invoked the Fifth Amendment privilege against self-incrimination in response to two of Bar Counsel's requests for production of documents, as well as in response to every question Bar Counsel asked at Mr. Malone's deposition. Although Bar Counsel's position was that Mr. Malone invoked the Fifth Amendment improperly, Bar Counsel did not file a motion to compel discovery. Instead, Bar Counsel filed a motion *in limine* seeking to preclude Mr. Malone from testifying at the upcoming evidentiary hearing on the alleged MLRPC violations.

At a hearing on Bar Counsel's motion *in limine*, Mr. Malone argued that a litigant should be allowed to "assert the privilege pretrial" but later "change [one's] mind and then testify" at trial. Mr. Malone also told the hearing judge that he probably would not testify as part of his "case in chief" at the upcoming evidentiary hearing, but that, if he were found "guilty" at the hearing, he would want to "address the Court" concerning the "sentence" to

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified without substantive changes in Title 19 of the Maryland Rules. The Petition for Disciplinary or Remedial Action in this case only charges violations of the MLRPC.

be imposed. At the conclusion of the hearing on the motion *in limine*, the hearing judge found that Mr. Malone invoked the privilege against self-incrimination in bad faith at his deposition. The hearing judge granted Bar Counsel's motion *in limine* and precluded Mr. Malone from testifying at the evidentiary hearing.

Following the evidentiary hearing, the hearing judge found that Mr. Malone violated the MLRPC, as alleged by Bar Counsel. The hearing judge also concluded that Bar Counsel proved the existence of several aggravating factors, and that Mr. Malone failed to establish the existence of any mitigating factors.

Mr. Malone subsequently filed exceptions to the hearing judge's findings of fact and conclusions of law in this Court. He contends that the hearing judge improperly sanctioned him for his assertion of the Fifth Amendment privilege against self-incrimination during discovery. Mr. Malone requests that we remand the case to the circuit court for an entirely new evidentiary hearing or, alternatively, that we suspend him from the practice of law for three months.

As discussed below, the hearing judge properly found that Mr. Malone violated Rules 8.1(a) and (b) and Rules 8.4(a), (b), (c), and (d). However, a limited remand is warranted to allow Mr. Malone to testify as to mitigation. Following that testimony, the hearing judge shall issue a supplemental opinion addressing mitigating factors and, if necessary, aggravating factors. We shall defer determination of the applicable aggravating and mitigating factors and the appropriate sanction for Mr. Malone's violations of the MLRPC, pending the proceedings on remand and further proceedings in this Court.

# I

## Background

### *The Allegations of Professional Misconduct*

Bar Counsel alleged in the Petition that Mr. Malone – a member of the Maryland Bar since 1999 – knowingly and intentionally provided false information to the Texas Board of Law Examiners (the "Texas Board" or the "Board") on several occasions during a multi-year quest to obtain admission to the Texas Bar. Bar Counsel alleged that Mr. Malone, on multiple occasions, knowingly failed to disclose to the Texas Board: (1) that he was admitted to practice law in the State of Virginia, in the United States District Court for the District of Maryland, and in other federal courts; and (2) that the Virginia State Bar and the United States District Court for the District of Maryland previously had sanctioned him. In addition, Bar Counsel alleged that, after the Texas Board opened an investigation and asked Mr. Malone to explain his failure to disclose his Virginia licensure and disciplinary history, Mr. Malone knowingly and intentionally made a false statement to the Texas Board when he claimed that he "failed to disclose [his] Virginia license and discipline to the board because [he] did not read the questions carefully enough" and that he "did not believe [he] was required to share [his] experience practicing law in Virginia." Bar Counsel alleged that Mr. Malone violated MLRPC 8.1(a), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).

On December 1, 2020, following Bar Counsel's filing of the Petition, this Court designated the Honorable Alison L. Asti of the Circuit Court for Anne Arundel County to conduct an evidentiary hearing in accordance with Maryland Rule 19-727. Judge Asti

issued a Scheduling and Pre-Trial Order providing, among other things, that all discovery was to be completed by April 14, 2021, that all motions *in limine* were to be filed by April 30, 2021, and that the evidentiary hearing on Petitioner's charges would begin on May 5, 2021.

*Mr. Malone's Answer to the Petition*

On February 3, 2021, Mr. Malone – who was not represented by counsel during the proceedings before the hearing judge in this case – filed an answer to the Petition, styled "Response to Petition for Disciplinary or Remedial Action." Mr. Malone admitted the majority of the factual allegations contained in the Petition, including: (1) that he knowingly and intentionally failed to disclose his admission to the Virginia State Bar, as well as his Virginia disciplinary history, to the Texas Board; and (2) that he made a knowing and intentional misrepresentation to the Texas Board when purporting to explain why he failed to disclose his Virginia license and discipline to the Board. However, Mr. Malone denied the allegations that he knowingly concealed his admission to, and his disciplinary history in, the United States District Court for the District of Maryland.

*Bar Counsel's Effort to Depose Mr. Malone*

On February 25, 2021, the Assistant Bar Counsel responsible for Mr. Malone's case ("Bar Counsel") advised Mr. Malone by email of her intention to take his deposition remotely and provided him with potential dates for the deposition. Mr. Malone replied to Bar Counsel the following day, asking that he be allowed to "avert a deposition, as the facts of [Bar Counsel's] case are essentially undisputed." On March 1, 2021, Bar Counsel advised Mr. Malone by email that she was moving forward with his deposition, and asked

that he provide his availability for the dates previously proposed. Mr. Malone subsequently replied: "The 5th Amendment as made applicable through the 14th, protects a person against testifying against himself. I therefore invoke my rights, and I respectfully request you to call off your deposition." Bar Counsel subsequently advised Mr. Malone that he could invoke his Fifth Amendment privilege in response to specific questions at the deposition and again requested that he provide available dates. In response, Mr. Malone emailed Bar Counsel: "I also invoke Rule 2-403[2] and object to the taking of the deposition itself on grounds that it serves no other purpose than to annoy, embarrass, and oppress me. Put simply. I am not sitting for a deposition. And if that means the Maryland Court of Appeals will revoke my law license, then so be it."

On March 2, 2021, Bar Counsel served Mr. Malone with a Notice of Deposition. On March 4, 2021, Mr. Malone filed a Motion for Protective Order to Quash the Notice of Deposition under Rule 2-403 in which he asserted, among other things, that "there is essentially no material issue of fact in dispute" and that "forcing a Respondent who has already confessed to undergo further examination is abusive and oppressive." Bar Counsel filed a response on March 5, 2021. By Order dated March 9, 2021, Judge Asti denied Mr. Malone's motion for a protective order. On March 12, 2021, Mr. Malone filed a reply[3]

---

[2] Maryland Rule 2-403(a) provides, in part: "On motion of a party, a person from whom discovery is sought, or a person named or depicted in an item sought to be discovered, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

[3] The record suggests that Mr. Malone mailed his reply to the circuit court for filing before receiving Judge Asti's Order denying his motion for a protective order.

again stating that no material facts were in dispute, and asserting that Bar Counsel had all the facts it needed to proceed against him at the evidentiary hearing. In response to Bar Counsel's suggestion that Mr. Malone invoke his Fifth Amendment privilege on a question-by-question basis during the deposition, Mr. Malone stated that "the plain language of the 5th amendment says that a person shall not be compelled to testify against himself, period!"

*Mr. Malone's Invocations of the Fifth Amendment*

a. *Responses to Document Requests*

On March 16, 2021, Mr. Malone served "Supplemental Answers to Petitioner's First Set of Documents Requests" on Bar Counsel. In response to requests for "[a]ll correspondence … between you and any individual identified in your Answers to Interrogatories" and for "[a]ll written correspondence or other documents you filed with and/or received from the Texas Board of Law Examiners," Mr. Malone objected on the basis of, among other things, the Fifth Amendment privilege against self-incrimination. Mr. Malone did not invoke the Fifth Amendment in response to Bar Counsel's other seven requests for production of documents.

b. *The Deposition*

On March 29, 2021, Mr. Malone appeared for his remote deposition. Mr. Malone invoked his Fifth Amendment privilege against self-incrimination in response to every question he was asked, including:

- "[C]an you just state and spell your name for the record, please."

- "[D]id you receive the documents that I sent you that I'll be referring to today?"

- "[A]re you able to see what I am sharing on the screen?"

- "What, if any, factors are you contending should be considered in mitigation of any potential sanction imposed in this matter?"

- "[Y]ou received Petitioner's interrogatories and Petitioner's request for production of documents that were served upon you; is that right?"

- "[A]re you disputing that you received a reprimand from Virginia?"

- "[A]re you disputing that you received a private reprimand from the United States District Court for the District of Maryland in 2012?"

- "[A]re you disputing that you knowingly and intentionally made misrepresentations on your Texas Bar application for admission to the Texas Bar?"

- "[C]an you explain the basis of … what your Fifth Amendment right is when you've admitted much of these matters already in your answer to the Petition for Disciplinary and Remedial Action in this case?"

In response to the question, "is it your intention today to assert your Fifth Amendment right to any and all questions I ask you," Mr. Malone replied, "Yes, ma'am."

After asking questions for approximately 10 minutes, Bar Counsel stated: "Well, at this time, I'm going to end the deposition, but I'm going [to] hold it open so that the Court has an opportunity to weigh in on what's clearly a discovery dispute in this case. So I think this concludes the deposition for today."

*Bar Counsel's Motion* in Limine

Although Bar Counsel held the deposition open, Bar Counsel did not file a motion to compel Mr. Malone to answer the questions he refused to answer on the basis of the Fifth Amendment. Nor did Bar Counsel move to compel Mr. Malone to provide responsive

documents he withheld on the basis of the Fifth Amendment. Rather, on April 1, 2021, Bar Counsel filed a motion *in limine* arguing that Mr. Malone should be precluded from testifying at the upcoming evidentiary hearing. Mr. Malone filed an opposition to the motion *in limine* on April 5, 2021.

*The Hearing on the Motion* in Limine

On April 26, 2021, the Honorable Robert J. Thompson of the Circuit Court for Anne Arundel County[4] held a hearing on Bar Counsel's motion *in limine*. At the hearing, Bar Counsel argued that, under the factors this Court set forth in *Taliaferro v. State*, 295 Md. 376 (1983),[5] the hearing judge should preclude Mr. Malone from offering his own testimony at the evidentiary hearing "based on his complete failure to answer any questions at his deposition in this matter, in addition to failing to answer two of Petitioner's requests for document production." Bar Counsel acknowledged that the respondent in an attorney grievance matter may invoke his or her rights under the Fifth Amendment, but argued that, in this case, Mr. Malone "has asserted his privilege in a wholesale manner" and, therefore, "not in good faith." Bar Counsel further argued that Mr. Malone's "failure to answer any

---

[4] On March 31, 2021, Mr. Malone filed a motion to recuse Judge Asti. By Order dated April 7, 2021, Judge Asti granted the motion. On the same date, this Court designated Judge Thompson to hear and determine this matter.

[5] *Taliaferro* concerned a trial court's exclusion of a purported alibi witness's testimony due to the defendant's belated disclosure of the witness. This Court stated that the decision to exclude such evidence "turns on the facts of the particular case," and noted several relevant factors to consider, including: "whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance." 295 Md. at 390-91.

8

questions at his deposition has prejudiced Petitioner's ability to prepare for trial in this matter, to prepare for cross-examination, in particular to … explore his defenses that he's asserted in this case and the positions that he's asserted, in addition to exploring what mitigation he intends to put on so that Petitioner could have taken additional discovery on those matters." Bar Counsel claimed that the prejudice could not be cured by a postponement of the evidentiary hearing "because there doesn't appear to be any indication that Mr. Malone intends to cooperate with the Petitioner or act in good faith in this case." Bar Counsel indicated that she was not asking the hearing judge to "draw any sort of negative [inference] from" Mr. Malone's having asserted the Fifth Amendment. Rather, Bar Counsel stated,

> Petitioner is just asking that he not be allowed to use his Fifth Amendment as both a shield in refusing to answer any questions at a deposition, but also a sword in introducing new information at trial, if he be allowed to testify on things that he … refused to answer questions about during his deposition.

In response, Mr. Malone told the hearing judge:

> Well, Your Honor, I probably won't be testifying in any type of case in chief that I would be making.
>
> I would like for the Court to allow me in case I am found to be, I'll use the word for lack of a better word, guilty, to at least address the Court in, what I'll call for lack of a better word, sentence.
>
> Now, as far as being allowed to testify, I still would argue that the Fifth Amendment privilege belongs to the suspect, and so it could be waived or asserted…. I haven't seen anything in the U.S. Constitution that says, well, if you assert the privilege pretrial then you waive your right to change your mind and then testify. So in that respect I don't think … bar counsel is correct in being able to do this to me.

Replying to Mr. Malone's argument, Bar Counsel alluded to the Court of Special Appeals' decision in *Kramer v. Levitt*, 79 Md. App. 575, 588 (1989), which Bar Counsel argued stands for the proposition that a civil litigant "who asserts their privilege against self-incrimination during the discovery stage … then can be prohibited from testifying on those same matters." Bar Counsel argued that such a rule makes sense because "if a party is free to shield themselves with a privilege during discovery but then has the full benefits of their testimony at trial, it … completely guts the purpose of discovery in these cases."

The hearing judge then considered the *Taliaferro* factors and *Kramer v. Levitt*, and granted Bar Counsel's motion *in limine*. The hearing judge found that Mr. Malone had invoked his Fifth Amendment privilege in bad faith:

> If … you had been asked a specific question about an alleged or purported ethical violation and you had refused to answer that question, that would be one thing, and it might be appropriate … in that case to invoke the Fifth Amendment privilege, but you showed bad faith when you wouldn't respond to whether a document was being properly shown to you by Zoom or spelling your name, that kind of thing.

Considering the prejudice to the parties, the hearing judge noted that "Mr. Malone has told me insofar as prejudice to him that he probably won't be testifying any way. So I think that that minimizes the impact of any prejudice on him that there may be." As for the prejudice to Bar Counsel if Mr. Malone were permitted to testify, the hearing judge stated:

> [W]hen you don't have discovery it's almost impossible to prepare for trial, it's almost impossible to prepare for cross-examination, it's almost impossible to prepare for impeachment of witnesses…. [Y]ou're not on notice of what defenses a party may have.
>
> … I think bar counsel is right, and it also is echoed in the words of … *Kramer versus Levitt*, that it's not fair to be able to use … the Fifth Amendment privilege as both a shield and a sword.

Finally, the hearing judge explained that "[t]rial is next week and it's not going to be postponed, because the rule requires that the trial be held within so many days of receiving the assignment, and I think we might have a few extra days left in the order, but not enough to postpone the case or allow for a second opportunity at deposition."

By Order dated April 27, 2021, the hearing judge formally granted Bar Counsel's motion *in limine* and ordered that Mr. Malone would be precluded from testifying at the evidentiary hearing.

*The Evidentiary Hearing*

The evidentiary hearing on the charges alleged in the Petition went forward on May 5, 2021. In his opening statement, Mr. Malone stated: "The evidence in this case will show that myself, Respondent, engaged in a continuous course of conduct to procure a Texas law license by fraud" but that, beginning in June 2016, he "corrected that or attempted to correct that situation by seeking readmission into Virginia, by reapplying to Texas and by no longer being deceitful." Mr. Malone explained that he was now "attempting to restore his life and get it back on track, so to speak, and that despite bar counsel's characterization of Respondent as a dishonest person, the evidence will show that Respondent engaged in an awful scandal but that otherwise there isn't a record of Respondent deceiving people, defrauding people or engaging in obstruction of justice or anything disruptive to the judicial system."

Bar Counsel introduced more than 20 exhibits relating to Mr. Malone's alleged misconduct in Texas. Bar Counsel did not call any witnesses. Mr. Malone introduced 14 exhibits as well as the testimony of a former client, Taylor Bastiand Woodyard. Ms.

Woodyard testified that Mr. Malone represented her very effectively, and that she referred him to family members and business associates who needed legal advice and representation. According to Ms. Woodyard, the people to whom she referred Mr. Malone provided her with "nothing but positive feedback about [Mr. Malone's] … integrity, … [his] knowledge of the law, [his] compassion and the way that [he] walk[s] them through … each of their options as to what to do. They were very – and still are very impressed with [Mr. Malone] and stated [he is] a credit to the law – the legal system."

The exhibits Mr. Malone introduced included, among other things, a list of Virginia Continuing Legal Education classes he had taken in 2016 as a "pre-condition to readmission to the Virginia state bar," a letter from the Texas Board "announcing a passing score for the February 2020 bar exam," and several news articles detailing his indictment in Texas for holding himself out as a lawyer by reciting the Declaration of Independence at a Fourth of July event at which attorneys traditionally read the Declaration.

In his closing argument, Mr. Malone again admitted that he had knowingly omitted his Virginia licensure and disciplinary history from his Texas Bar application. Mr. Malone also engaged in an extended colloquy with the hearing judge about various events in Texas that did not directly bear on Bar Counsel's charges but seemingly touched upon potential mitigating factors. For example, Mr. Malone told the hearing judge about some of the circumstances concerning his prior Virginia suspension. In addition, he provided more information about his indictment in Texas for holding himself out as an attorney, and argued that this criminal charge shows that he has already "been punished" and "suffered consequences" for his professional misconduct.

At several points during his discussion with the hearing judge, Mr. Malone indicated awareness that he should not be "testifying," and curtailed his remarks concerning the points he was trying to make. However, Mr. Malone did provide an explanation in his closing argument concerning his failure to disclose his admission to, and his private reprimand from, the United States District Court for the District of Maryland. As to why he initially failed to disclose his admission to the federal district court in Maryland, Mr. Malone stated that he was admitted in "about eight, nine courts. Now that doesn't excuse it but the reason it could have been was I don't feel like writing all this stuff down, admission date, admission year and all that stuff, each court[.]" Regarding the private reprimand from the Maryland federal court, Mr. Malone stated: "My argument is that I lied about Virginia and then what they're trying to do is pin the second one on me. And it wasn't a conscious lie. I knew what I was doing with Virginia and I said, okay, I'm not going to list that state. That was intentional…. This other one, I did not have that in mind. It was a private reprimand. I forgot about it. I did."

At that point, Bar Counsel objected that Mr. Malone was "using closing argument to testify in this case." The hearing judge replied that Bar Counsel's objection "is noted," but did not rule on it. Mr. Malone then continued: "Okay. Well, the evidence is … that all courts were listed. And so if that was intent to deceive, why would I have listed that court? If I wanted to hide it, I would have just not listed it and they would have never known about it. And it's harder to find out about federal discipline than state. They wouldn't have even known that I was admitted in that court. So pinning that second deception on me was not right. I think the Texas Board of Law Examiners was wrong in doing it. And I would hope

13

that this Court does not adopt their factual finding in that regard." (Paragraph break omitted.)

*The Parties' Proposed Findings of Fact and Conclusions of Law*

On May 21, 2021, Bar Counsel filed Petitioner's Proposed Findings of Fact and Conclusions of Law. On May 27, 2021, Mr. Malone filed his Proposed Findings of Fact and Conclusions of Law. In his submission, Mr. Malone again acknowledged his "dishonesty in procuring admission in Texas." However, he asked the hearing judge to conclude that he "could not have possibly violated Rule 8.1" because his misconduct involved attempts to gain admission to the Texas Bar, not the Maryland Bar. Mr. Malone conceded that he violated Rule 8.4(c), in that "Respondent, by his own admission intentionally concealed negative information about himself to the Texas Board … in seeking admission to practice law in Texas." Mr. Malone did not ask the hearing judge to find that he knowingly omitted only his Virginia licensure and disciplinary history from his Texas Bar applications, and that his failure to disclose his admission to, and his disciplinary history in, the United States District Court for the District of Maryland, was inadvertent.

In his submission, Mr. Malone did not expressly refer to "mitigation" or any of the mitigating factors this Court has recognized in attorney grievance cases. However, Mr. Malone asked the hearing judge to find facts that seemingly bore on the mitigating factors

14

of good character or reputation, interim rehabilitation, and imposition of other penalties or sanctions.[6]

## II

### The Hearing Judge's Findings of Fact and Conclusions of Law

On June 4, 2021, the hearing judge filed with this Court an opinion containing his findings of fact and conclusions of law, as well as findings concerning aggravating and mitigating circumstances. The hearing judge concluded that Mr. Malone violated MLRPC 8.1(a) and (b) and 8.4(a), (b), (c), and (d). The hearing judge also found that Bar Counsel established the existence of several aggravating factors, and that Mr. Malone failed to establish the existence of any mitigating factors.

#### A. The Hearing Judge's Findings of Fact

We summarize here the hearing judge's findings of fact.

*Background*

Mr. Malone was admitted to the Bar of Maryland and the Bar of the Commonwealth of Virginia in 1999. He has also been admitted to practice in several United States District Courts, including: the Eastern District of Virginia in 2001, the Western District of Virginia in 2005, the District of Maryland in 2003, the District of Columbia in 2003, the Central

---

[6] For example, Mr. Malone asked the hearing judge to find that "Mr. Malone has already paid a price for his misbehavior. He has faced the economic hardship of having his Texas license canceled as well as the public embarrassment and humiliation of having his license canceled and being indicted for simply reading the Declaration of Independence."

District of Illinois in 2004, the Northern District of Illinois in 2013, the Eastern District of Texas in 2015, and the Western District of Texas in 2015.

*Virginia Disciplinary History*

On February 28, 2011, the Virginia State Bar issued Mr. Malone a public reprimand for violating Virginia Rules of Professional Conduct 1.3 (diligence), 1.16(d) (declining or terminating the representation), and 8.1(c) (failure to respond to bar counsel). Mr. Malone's discipline stemmed from two client complaints. The first complaint was filed by Derrick Clayton in December 2006. After Mr. Clayton retained Mr. Malone and paid him $1,000 to represent him in a family law matter, Mr. Malone only spoke with Mr. Clayton one time about the status of the case and failed to respond to Mr. Clayton's numerous requests for information. The second complaint was filed by Keya Woods in June 2007. Ms. Woods retained Mr. Malone to represent her husband in his appeal of a criminal conviction. Although Mr. Malone timely filed a notice of appeal, he failed to timely file the trial transcripts. The court ultimately dismissed the appeal.

The Virginia State Bar served Mr. Malone with a summons and subpoena duces tecum compelling his appearance before the Fourth District Committee and demanding that he produce both client files for inspection. After Mr. Malone failed to appear, the Virginia State Bar Disciplinary Board administratively suspended him from the practice of law for his non-compliance. In or around June 2009, Mr. Malone took steps to have the suspension lifted but still failed to provide responses to the complaints.

The Fourth District Committee held a hearing to determine whether Mr. Malone's conduct violated the Rules of Professional Conduct. As noted above, Mr. Malone was

16

issued a public reprimand. The terms of the reprimand required Mr. Malone to complete six Continuing Legal Education hours within six months of the reprimand. Mr. Malone knowingly and intentionally failed to inform Maryland Bar Counsel of his public reprimand as required under Maryland Rule 19-737(a).[7]

Mr. Malone failed to pay the disciplinary costs in connection with his reprimand, resulting in an administrative suspension on April 28, 2011. His failure to pay annual dues for two successive years resulted in his Virginia law license being forfeited on or about March 20, 2013. By order dated May 26, 2016, the Virginia State Bar Disciplinary Board terminated Mr. Malone's 2011 suspension for non-payment of costs.

*Federal Court Disciplinary History*

On December 12, 2012, Chief Judge Deborah K. Chasanow of the United States District Court for the District of Maryland issued Mr. Malone a private reprimand, stating:

> The Disciplinary & Admissions Committee of the Court has reviewed your response to the Court's Order to Show Cause dated November 7, 2012. By Order entered on September 26, 2012, you were found in contempt by Bankruptcy Court Judge James F. Schneider in the case [] *In re T.D. Bistro, Inc.*, Case No. 11-19367 JS, for failure to appear in a court proceeding without proper justification. Your response at the contempt hearing and to this Court's show cause order was to claim financial hardship.
>
> The Disciplinary and Admissions Committee has found your explanation unacceptable. As an out-of-state attorney, you should not undertake representation of a client in this State if you are not prepared to appear at local proceedings.
>
> The Court therefore, at the recommendation of the Disciplinary and Admissions Committee, hereby issues a private reprimand to you based on

---

[7] At the time Mr. Malone received his public reprimand in Virginia, the Maryland Rule that required him to disclose the reprimand to Bar Counsel was Rule 16-773(a). Maryland Rule 19-737 was adopted in 2016, replacing prior Rule 16-773.

your conduct. Despite the informal nature of this letter, it shall be treated as an order of this Court closing this case.

Mr. Malone knowingly and intentionally failed to inform Bar Counsel of this private reprimand as required by Maryland Rule 19-737(a).[8]

*Texas Bar Application and Admission*

On June 5, 2013, Mr. Malone filed an Application for Admission without Examination to the Texas Bar with the Texas Board. Question 3 of the application required Mr. Malone to "[l]ist all state, federal, and/or foreign jurisdictions where you have been licensed or admitted to practice law." Mr. Malone disclosed his admission to the Maryland Bar. Mr. Malone knowingly and intentionally failed to disclose his admission to the Virginia State Bar, the United States District Court for the District of Maryland, and various other federal district courts. The hearing judge found that, at or around the time Mr. Malone applied for admission to the Texas Bar in June 2013, he was actively representing clients before various federal district courts. Between May 2011 and February 2013, Mr. Malone represented a client before the United States Bankruptcy Court in the District of Maryland. This was the case in which Mr. Malone was held in contempt and that led to the issuance of the private reprimand in December 2012. In addition, between February 2013 and September 2013, Mr. Malone represented a client in a separate matter before the United States District Court for the District of Maryland. Between June 2013 and June 2014, Mr. Malone represented a client before the United States District Court for the Northern District of Illinois.

---

[8] *See* footnote 7 above.

Question 13 of the application asked, "[h]ave you ever been held in contempt or sanctioned by a court?" Mr. Malone answered "no." Mr. Malone knowingly and intentionally misrepresented his disciplinary history by failing to disclose that he had been held in contempt by the United States Bankruptcy Court in the District of Maryland and sanctioned by the United States District Court for the District of Maryland.

Question 17(c) of the application asked, in relevant part, "[h]ave you ever been … suspended from practice, disciplined, disqualified … or has your license ever been qualified or conditioned in any way …?" Mr. Malone answered "no." Mr. Malone knowingly and intentionally misrepresented his disciplinary and licensing history by failing to disclose the Virginia discipline and administrative suspensions and the reprimand issued by the United States District Court for the District of Maryland.

The application included an affidavit, signed by Mr. Malone on June 3, 2013, swearing that he "responded to all inquiries on [the application] fully and frankly, and all the information contained in [the] application … is true and correct." Mr. Malone's affidavit was knowingly and intentionally false.

To qualify for admission without examination, Mr. Malone was required to submit his federal tax returns from 2006-2012. He failed to do so, asserting that his tax returns were "none of the Board's business." Rather than submit the required documentation, on November 18, 2013, Mr. Malone elected to apply for admission to the Texas Bar by taking the February 2014 Texas Bar Examination. Mr. Malone took the exam but did not pass.

On May 9, 2014, Mr. Malone filed a sworn Re-Application for Admission to the Bar of Texas. Again, Mr. Malone failed to disclose his admission to the Virginia Bar or the

various United States District Courts, including the District of Maryland, and failed to disclose his disciplinary history. Rule X(e) of the Rules Governing Admission to the Bar of Texas states, in part, that "[t]he Applicant has a continuing duty to ensure the accuracy and completeness of the Applicant's responses on the Application and to update those responses until the Applicant is certified to the Supreme Court for licensure."[9]

On December 5, 2014, Mr. Malone filed a second sworn Re-Application for Admission to the Bar of Texas. Again, Mr. Malone failed to disclose his admission to the Virginia Bar or the various United States District Courts, and failed to disclose his disciplinary history.

Mr. Malone again took the Texas Bar Exam in July 2014 but did not pass. Mr. Malone passed the February 2015 Texas Bar Exam and was admitted to the Texas Bar on April 30, 2015.

On February 10, 2016, the Texas Board opened an investigation after receiving notice of Mr. Malone's disciplinary history in Virginia from the District Attorney of Sabine and San Augustine Counties, Texas. On February 10, 2016, the Texas Board advised Mr. Malone that it was investigating whether he obtained his Texas law license fraudulently or by a willful failure to comply with the Rules Governing Admission to the Bar of Texas. Rule XVII(b) provides:

> All law licenses are issued on the condition that the Applicant has faithfully complied with these Rules. If at any time it appears that an Applicant has

---

[9] The Rules Governing Admission to the Bar of Texas ended the use of Roman Numerals in December 2019. Rule X(e) is now Rule 10(e). Rule XVII(b), discussed below, is now Rule 17(b). The language of these rules did not change when the numbering changed.

obtained a license fraudulently or by willful failure to comply with these Rules, after notice and hearing, the Board may recommend to the Supreme Court that the license be withdrawn and canceled, and the name of the license holder stricken from the roll of attorneys.

The Texas Board asked Mr. Malone to explain why he failed to disclose his Virginia licensure and disciplinary history. Mr. Malone responded by letter dated February 25, 2016, as follows:

I failed to disclose my Virginia license and discipline to the board because I did not read the questions carefully enough. In applying for a Texas law license under the admission by motion program, I planned on using Maryland as the reciprocal state. As such, I did not believe I was required to share my experience practicing law in Virginia.

This statement by Mr. Malone to the Board was a knowing and intentional misrepresentation.

On May 13, 2016, Mr. Malone appeared before the Texas Board for a hearing and admitted that his statements to the Board in his February letter were false. He admitted to carefully reading the application questions, that he knew of his requirement to disclose his Virginia license and disciplinary history, and that he intentionally answered questions 3 and 17(c) falsely.

By Order and Opinion dated May 24, 2016, the Texas Board concluded that Mr. Malone obtained "his license to practice law in Texas fraudulently or by willful failure to comply with the Rules." The Texas Board found that Mr. Malone's knowing and intentional misrepresentations on his bar applications "were material, were relied upon by the Board, and benefitted Mr. Malone in that he was licensed to practice law in Texas without any opportunity for the Board to make an informed determination regarding Mr.

Malone's moral character." The Texas Board further found a "clear and rational connection" between Mr. Malone fraudulently obtaining his Texas law license and "the likelihood he would injure a client, obstruct the administration of justice, or violate the *Texas Disciplinary Rules of Professional Conduct*." The Texas Board recommended to the Supreme Court of Texas that Mr. Malone's license be withdrawn and canceled.

The Supreme Court of Texas withdrew and canceled Mr. Malone's Texas law license by Order dated June 7, 2016. The Order required Mr. Malone to immediately notify his Texas clients and all Texas tribunals in which he had a pending matter of the Order and submit an affidavit stating he had done so. In response to the Supreme Court's Order, Mr. Malone submitted an affidavit asserting that "[the Supreme] Court has no authority to compel me to do a thing… Requiring me to submit memos to judges and then file an affidavit with this Court constitutes involuntary servitude."

On June 15, 2016, Mr. Malone filed a Re-Application for Admission to the Texas Bar. He answered affirmatively to the question whether he has been charged with fraud, or alleged to have committed fraud, in a legal proceeding. Mr. Malone stated: "My misrepresentation only became an issue when a District Attorney … came forward and complained to the Board after I begin to expose and challenge his unconstitutional practices." The Texas Board granted Mr. Malone's request that he not be required to retake the Texas bar exam.

During Mr. Malone's character and fitness investigation, the Texas Board asked him to provide a complete list of all federal jurisdictions in which he was licensed. Based on that list, the Board sent inquiries to multiple jurisdictions. The Board was advised by the

United States District Court for the District of Maryland that Mr. Malone had been issued a private reprimand on December 12, 2012. As of 2016, Mr. Malone had failed to disclose this private reprimand to the Board. Following the character and fitness investigation, the Board notified Mr. Malone that a hearing would be held to determine whether

> Mr. Malone's incomplete and false disclosures in connection with multiple applications for admission to the Bar of Texas indicates he lacks the good moral character required for admission; whether Mr. Malone's Virginia State Bar disciplinary history indicates he lacks the good moral character required for admission; whether Mr. Malone's history of obtaining his Texas law license by fraud or willful failure to comply with the Rules Governing Admission to the Bar of Texas and the subsequent cancellation of that license indicates he lacks the good moral character required for admission; and whether Mr. Malone's correspondence with the Supreme Court of Texas and the Board of Law Examiners indicates he lacks trustworthiness in carrying out responsibilities directly related to the judicial process.

At the July 7, 2017 hearing before the Board, Mr. Malone testified that he failed to disclose his admission and disciplinary history in the United States District Court for the District of Maryland because he did not "remember" he was admitted to that court. The Board found Mr. Malone's testimony not credible, noting that Mr. Malone was disciplined in the United States District Court for the District of Maryland in December 2012 and applied for admission to the Texas Bar only six months later in June 2013. The Board further found that Mr. Malone's "failure to provide credible testimony or a legitimate explanation regarding the reason for his failure to disclose his disciplinary history with the United States District Court for the District of Maryland, is indicative of dishonesty and a lack of trustworthiness."

By Order dated July 21, 2017, the Board concluded that Mr. Malone did not possess the present good moral character required for admission to practice law in Texas. The Order

required, among other things, that Mr. Malone provide copies of the Order to any jurisdiction in which he is admitted to practice law.

On August 17, 2017, Mr. Malone filed a Petition for Review in the District Court for Travis County, Texas, requesting the court to review and overturn the Board's decision denying him admission to the Texas Bar. In the Petition, Mr. Malone alleged that the Board denied him admission "because it wanted to punish him for 'pulling one over' on them and failing to be humble in re-applying for a license." He also accused the Board of acting out of spite and trying to destroy him. In April 2020, Mr. Malone filed a Notice of Nonsuit in the District Court for Travis County, asking the court to dismiss his claims against the Board. On April 22, 2020, the Travis County District Court dismissed Mr. Malone's claims against the Board.

Mr. Malone reapplied for admission in Texas. At the time of the evidentiary hearing, his application was pending satisfaction of the requirement of present good moral character and fitness for admission to the Texas Bar.

## B. The Hearing Judge's Conclusions of Law

Based on his findings of fact, the hearing judge concluded by clear and convincing evidence that Mr. Malone violated MLRPC 8.1(a) and (b), and 8.4(a), (b), (c), and (d).

*Rule 8.1 – Bar Admissions and Disciplinary Matters*

Rule 8.1 provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

The hearing judge concluded:

The Respondent violated Rule 8.1(a) when he answered "no" to Questions 13 and 17(c) of the Texas Bar application…. The Respondent knowingly and intentionally misrepresented his disciplinary history by failing to disclose that he had been held in contempt by the bankruptcy court, sanctioned by the United States District Court for the District of Maryland, and reprimanded and administratively suspended in Virginia.

The Respondent also intentionally failed to disclose his admissions to the Virginia Bar and various U.S. District Courts to conceal his disciplinary history from the Board. By only disclosing his admission to Maryland in response to a question requiring the Respondent to list all jurisdictions in which he is licensed, the Respondent violated Rule 8.1(a).

Additionally, the bar application included an affidavit, signed by the Respondent swearing that he "responded to all inquiries on [the application] fully and frankly, and all the information contained in [the] application is true and correct." The Respondent's affidavit was knowingly and intentionally false. During the Board's subsequent investigation of the Respondent, he continued to make misrepresentations, falsely stating that his disclosure failures were the result of not reading the bar applications questions carefully enough. The Respondent's numerous deliberate falsehoods to the Board to fraudulently gain admission to the Texas Bar violate Rule 8.1(a).

The Respondent violated Rule 8.1(b) when he failed to supplement his June 2013 bar application and subsequent re-applications with his admissions and disciplinary history, thereby failing to correct the misapprehension that he had fully disclosed his disciplinary history in all licensed jurisdictions. By failing to disclose his Virginia and U.S. District Court for the District of Maryland admissions, and falsely answering questions regarding his disciplinary history, the Respondent created the misapprehension. The Respondent continually failed to correct this misapprehension. He failed to provide the Board with a list of all federal jurisdictions in which he was licensed until September 2016, when the Board explicitly asked for such information during its character and fitness investigation of the Respondent's reapplication after his Texas license was cancelled. The Respondent's

25

knowing and intentional concealment of material information from the Board violated Rule 8.1(b).

*Rule 8.4 – Misconduct*

Rule 8.4 provides, in part:

It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge concluded that Mr. Malone violated Rule 8.4(a) by violating other rules of professional conduct.

The hearing judge concluded that Mr. Malone violated Rule 8.4(b) when he knowingly and intentionally provided false responses on his sworn Texas bar applications, and when he declared under oath in his affidavit that the information he provided was true and correct, thereby committing perjury under Texas law.[10] The hearing judge explained:

Although the Respondent was not charged with or convicted of perjury in Texas, the Respondent committed perjury in violation of Rule 8.4(b) when he declared under oath in the affidavit that the information contained in his bar application was true and correct and that he had responded to all

---

[10] The Texas perjury statute, Tex. Pen. Code § 37.02 (2021), states:

(a) A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning:
    (1) he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; or
    (2) he makes a false unsworn declaration under Chapter 132, Civil Practice and Remedies Code.

(b) An offense under this section is a Class A misdemeanor.

questions fully and frankly. The Respondent's affidavit was knowingly and intentionally false. The Respondent's conduct clearly reflects adversely on his honesty and trustworthiness, in violation of Rule 8.4(b).

The hearing judge concluded that Mr. Malone also violated Rule 8.4(c):

The Respondent's deliberate failure to disclose his admission to the Virginia State Bar and various Federal District courts and his disciplinary history in Virginia and the U.S. District Court for the District of Maryland on his various Texas bar applications violated Rule 8.4(c). The Respondent made numerous knowing and intentional misrepresentations to the Texas Board, including answering no to questions on the bar application asking if he had ever been held in contempt or sanctioned by a court or if he had ever been disciplined or had his law license qualified or conditioned. The Respondent continued his course of dishonest conduct when he repeatedly failed to disclose his various admissions or disciplinary history on subsequent bar applications.

…

The Respondent's willfully dishonest conduct continued from his misrepresentations on his June 2013 bar application to his false testimony regarding his reason for failing to disclose his disciplinary history in the U.S. District Court for the District of Maryland during his July 2017 Board hearing. The Respondent's sustained course of dishonesty in his efforts to become and remain a Texas attorney violated Rule 8.4(c). Finally, each violation of Rule 8.1(a) constitutes a violation of 8.4(c).

The hearing judge also concluded that Mr. Malone violated Rule 8.4(d):

The Respondent engaged in a pattern of dishonest and deceitful conduct in his efforts to be admitted to the Bar in Texas. The Respondent deliberately concealed material information from the Texas Board to obtain admission. The Respondent's conduct was not limited to a single instance of dishonesty but continued over several years, leading to the withdrawal of his Texas law license and denial of reapplication to the Texas Bar. The Respondent's conduct reflects negatively on [the] public's perception of the legal profession, in violation of Rule 8.4(d).

**C. The Hearing Judge's Findings as to Aggravating and Mitigating Factors**

*Aggravating Factors*

We have enumerated the aggravating factors that, if found, are relevant to the appropriate sanction:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (citation omitted). Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence. *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 708 (2019).

The hearing judge found the existence of five aggravating factors: (1) prior disciplinary offenses; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) bad faith obstruction of the disciplinary proceeding; and (5) substantial experience in the practice of law.

The hearing judge concluded that Mr. Malone received prior discipline, *i.e.*, the public reprimand by the Virginia State Bar on February 11, 2012, and the private reprimand by the United States District Court for the District of Maryland on December 12, 2012.

28

The hearing judge concluded that Mr. Malone "demonstrated a dishonest and selfish motive and committed a pattern of misconduct in his years long pursuit for admission to the Texas Bar, engaging in a sustained course of dishonesty and deceit."

The hearing judge concluded that Mr. Malone engaged in bad faith obstruction of the disciplinary process, based on Mr. Malone's invocation of the Fifth Amendment privilege against self-incrimination at his deposition in response to every question he was asked, including questions asking him: (1) to spell his name for the record; (2) whether he received the documents that Bar Counsel had emailed him prior to the deposition; and (3) whether he was able to see what Bar Counsel was sharing on her screen.

Finally, the hearing judge found that Mr. Malone was admitted to the Maryland Bar in 1999 and, therefore, has substantial experience in the practice of law.

*Mitigating Factors*

We have previously listed relevant mitigating factors as including

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 209 (2014) (citation omitted). An attorney must prove the existence of mitigating circumstances by a preponderance of the evidence. *Edwards*, 462 Md. at 708.

The hearing judge concluded that Mr. Malone failed to prove any mitigating circumstances by a preponderance of the evidence.

## III

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous. We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Hoerauf*, 469 Md. 179, 207-08 (2020) (cleaned up).

## IV

## Discussion

Either party may file "exceptions to the findings and conclusions of the hearing judge[.]" Md. Rule 19-728(b). Bar Counsel has not filed any exceptions. In his exceptions, Mr. Malone claims that the hearing judge erred by: "(1) punishing Respondent when he invoked his Fifth Amendment right against self-incrimination; (2) failing to undertake an analysis of mitigating factors; (3) failing to recognize the existence of various mitigating factors; and (4) failing to properly analyze the existence of aggravating factors."[11]

We disagree with Mr. Malone's claim that the hearing judge "punished" him for invoking the privilege against self-incrimination. We also determine that the hearing judge

---

[11] Mr. Malone contends that the hearing judge erred in his application of the aggravating factors of dishonest or selfish motive and pattern of misconduct. According to Mr. Malone, "[w]hen analyzing those factors on page 24 [of his opinion]…, the trial court

properly concluded that Mr. Malone violated the MLRPC, as alleged by Bar Counsel. However, we conclude that the hearing judge's order precluding Mr. Malone from testifying at the evidentiary hearing was in error to the extent it prevented Mr. Malone from testifying as to mitigating factors. We conclude that a limited remand is necessary to permit Mr. Malone to testify concerning mitigation, and to allow the hearing judge to make any appropriate supplemental findings concerning mitigating factors and aggravating factors.

## A. The Hearing Judge's Ruling Precluding Mr. Malone From Testifying at the Evidentiary Hearing

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In order to be subject to a valid assertion of the Fifth Amendment privilege, an individual's statement must be compelled, testimonial, and self-incriminating. *See Fisher v. United States*, 425 U.S. 391, 408 (1976). "This right against self-incrimination is based on the 'conviction that too high

---

simply details how [Mr. Malone] invoked the Fifth Amendment. The trial court never says why invoking the Fifth Amendment was 'dishonest or selfish' or why it represents a 'pattern of misconduct.' This was clear error and the idea that the assertion of one's Constitutional rights is somehow dishonest, selfish, or misconduct is, to say the least, deeply troubling."

It appears that Mr. Malone has misunderstood this part of the hearing judge's opinion. The hearing judge analyzed the aggravating factors of dishonest or selfish motive and pattern of misconduct on page 23 (and the top of page 24) of his opinion, without mentioning Mr. Malone's assertion of the Fifth Amendment. The confusion seemingly stems from the headings the hearing judge used in the aggravating factors section of his opinion. The hearing judge analyzed the aggravating factors of dishonest or selfish motive and pattern of misconduct under a heading tied to the aggravating factor of prior discipline. The hearing judge discussed the aggravating factor of bad faith obstruction of the disciplinary proceeding, in part, under a heading tied to the factors of dishonest or selfish motive and pattern of misconduct.

a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed.'" *In re Ariel G.*, 383 Md. 240, 245 (2004) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). To further these goals, "the Fifth Amendment allows an individual to refuse, without threat of punishment, to respond to questions the answers to which not only would support a criminal conviction, but also those that would 'furnish a link in the chain of evidence needed to prosecute the claimant for a ... crime.'" *Id.* (quoting *Hoffman*, 341 U.S. at 486). To "invoke the right against self-incrimination, 'it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer ... might be dangerous because injurious disclosure could result.'" *Id.* at 246 (quoting *Hoffman*, 341 U.S. at 486-87).

Mr. Malone contends that the hearing judge erroneously relied on *Maryland State Bar Association, Inc. v. Sugarman*, 273 Md. 306 (1974), and "punished" him for asserting his Fifth Amendment privilege at the deposition and in response to Bar Counsel's requests for production of documents. Mr. Malone asks us to overrule *Sugarman* or to limit *Sugarman* to its facts. We reject Mr. Malone's characterization of the hearing judge's ruling, as well as his contention that *Sugarman* was incorrectly decided or that we should limit its scope.

In *Sugarman*, this Court held that testimony compelled under a federal witness immunity statute, 18 U.S.C. § 6002, may form the evidentiary basis for disciplinary action against an attorney. 273 Md. at 318-19. Sugarman, an attorney, testified as a witness under a grant of federal immunity in a criminal case against Dale Anderson in United States

District Court. *Id.* at 308. At Anderson's trial, Sugarman admitted to having engaged in a scheme to avoid income taxes for a client, which included providing fraudulent invoices to the client for services Sugarman had not actually rendered. *See id.* at 308-09. After Sugarman's immunized testimony from the criminal trial was admitted at his disciplinary hearing, the disciplinary panel recommended disbarment. *See id.* Sugarman argued before this Court that the use of his compelled testimony at his disciplinary hearing violated the Fifth Amendment. *See id.* at 309-10. This Court disagreed, holding that, while the Fifth Amendment ensures that compelled testimony "can in no way lead to the infliction of criminal penalties," *id.* at 310 (quoting *Kastigar v. United States*, 406 U.S. 441, 461 (1972)), the admission of Sugarman's immunized statements at the disciplinary hearing did not violate the Fifth Amendment because disbarment is not a criminal penalty. *See id.* at 315-16 (explaining that "disciplinary proceedings for professional misconduct are not criminal proceedings" and relying on the "traditional view of disbarment" as "not intended as punishment to the individual, but as protection to the public from such individuals").

In his written opinion following the evidentiary hearing in this case, the hearing judge cited *Sugarman* in a footnote after stating that he had precluded Mr. Malone from testifying at the hearing. Mr. Malone interprets this citation of *Sugarman* as indicating that the hearing judge failed to recognize that the Fifth Amendment applies to disciplinary cases. From that premise, Mr. Malone argues that the hearing judge "punished" him for his invocation of his privilege against self-incrimination by precluding his testimony.

Mr. Malone has misinterpreted the hearing judge's reference to *Sugarman*. At the hearing on the motion *in limine*, both Bar Counsel and the hearing judge made plain that

33

Mr. Malone did have the right under the Fifth Amendment to refuse to answer any questions at his deposition, or to produce records, that might tend to incriminate him.

Of course, we agree: it is well settled that, unless the privilege previously has been waived, an attorney charged with disciplinary offenses has the right under the Fifth Amendment to refuse to answer a question – during discovery or at the evidentiary hearing on the charges – if a truthful answer to such a question might tend to incriminate the attorney. *See, e.g.*, *Spevack v. Klein*, 385 U.S. 511 (1967); *Attorney Grievance Comm'n v. Unnamed Attorney*, 298 Md. 36, 43-44 (1983). In *Spevack*, the Supreme Court held that an attorney may not be disbarred on the basis of his invocation of the privilege against self-incrimination. 385 U.S. at 514-15. In that case, the disciplinary body and the disbarring court in New York assumed that the attorney legitimately could invoke the privilege with respect to records sought by subpoena. The court ran afoul of the Fifth Amendment by disbarring the attorney based on that assertion of the privilege. *See id.* at 517-18.

As discussed above, *Sugarman* addressed a different point: how the disciplinary body may use testimony that was compelled in a different forum. This Court held that immunized statements – which could not be admitted at an attorney's criminal trial – may be used as evidence in a disciplinary proceeding against the attorney.

Nobody has compelled Mr. Malone to make any statement, nor did the hearing judge sanction Mr. Malone for what the hearing judge believed to be a legitimate invocation of the privilege against self-incrimination. For this reason, Mr. Malone's reliance on *Spevack*

34

is misplaced, as is his criticism of the hearing judge's reference to *Sugarman*.[12] Contrary to Mr. Malone's contention, *Spevack* and *Sugarman* comfortably co-exist.

Nevertheless, Mr. Malone's exception to the hearing judge's exclusion of his testimony at the evidentiary hearing raises two important questions. First, when a discovering party believes that a person has improperly invoked the Fifth Amendment to avoid answering a question in a deposition or to respond to a written discovery request, what relief may the party seek? Second, how should a trial judge in a civil case proceed when a party, who invoked the Fifth Amendment regarding a particular subject during pretrial discovery, subsequently indicates a desire to testify at trial on the same subject? We consider these questions in turn.

1. The Proper Procedure to Complain About an Improper Assertion of the Fifth Amendment Privilege in Civil Discovery

Under Maryland Rule 19-727(a), the hearing of a disciplinary or remedial action generally "is governed by the rules of evidence and procedure applicable to a non-jury trial in a civil action in a circuit court." When a party in a civil action believes that a person has improperly invoked the Fifth Amendment privilege against self-incrimination to avoid answering a question in a deposition or to provide documents or other information in

_____

[12] Notably, the hearing judge did not rely on *Sugarman* in excluding Mr. Malone's testimony at the hearing on the motion *in limine*.

response to a discovery request, the Maryland Rules provide the discovering party with tools to obtain relief.

With respect to a deposition, Maryland Rule 2-415(i) provides: "When a deponent refuses to answer a question, the proponent of the question shall complete the examination to the extent practicable before filing a motion for an order compelling discovery." After completing the deposition, the proponent of the question(s) that were not answered may file a motion under Maryland Rule 2-432(b) for an order compelling the deponent to answer the questions. Similarly, if a party fails to answer an interrogatory submitted under Rule 2-421 or fails to comply with a request for production or inspection under Rule 2-422, the discovering party may seek an order compelling discovery under Rule 2-432(b).[13]

---

[13] Rule 2-432(b) provides, in pertinent part:

(1) *When Available*. A discovering party, upon reasonable notice to other parties and all persons affected, may move for an order compelling discovery if

….

(B) a deponent fails to answer a question asked in an oral or written deposition,

…

(D) a party fails to answer an interrogatory submitted under Rule 2-421, [or]

(E) a party fails to comply with a request for production or inspection under Rule 2-422[.]

….

(2) *Contents of Motion*. A motion for an order compelling discovery shall set forth: the question, interrogatory, or request; and the answer or objection; and the reasons why discovery should be compelled[.]

At a hearing on the discovering party's motion to compel, the hearing judge should determine whether the invocation of the Fifth Amendment was proper, on a question-by-question basis. *See, e.g., United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991). If the court concludes that the invocations were justified, the court should deny the motion to compel discovery. To the extent the court determines that the person who invoked the privilege cannot possibly incriminate himself or herself by answering particular questions or interrogatories, or by producing documents in response to particular discovery requests, the court should grant the motion to compel and order the person to provide the requested discovery.[14]

If the court enters an order compelling discovery, and the person subject to the order fails to comply with that order – either by continuing to invoke the Fifth Amendment privilege in response to the questions the court ordered the person to answer, or otherwise withholding the requested discovery – Rule 2-433(c) provides that "the court, upon motion of a party and reasonable notice to other parties and all persons affected, may enter such orders in regard to the failure as are just, including one or more of the orders set forth in section (a) of this Rule." Rule 2-433(a), in turn, allows the court to "enter such orders in regard to the failure as are just," including one or more of the following sanctions: "(1) An order that the matters sought to be discovered, or any other designated facts shall be taken

---

[14] In some instances, the hearing judge may find it necessary and appropriate to conduct an *ex parte*, *in camera* examination of the person who has invoked the privilege to determine whether the particular invocation(s) were appropriate, without potentially disclosing privileged information to others. *See, e.g.*, *In re Kefalidis*, 714 N.E.2d 243, 249 (Ind. Ct. App. 1999); *United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991).

to be established for the purpose of the action in accordance with the claim of the party obtaining the order; (2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or (3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party." (Paragraph breaks omitted).

Different provisions apply where a party fails to appear for a deposition after proper notice, or fails to serve a response to interrogatories under Rule 2-421 or to a request for production or inspection under Rule 2-422, after proper service. In such a situation, although the discovering party may proceed with a motion to compel discovery under Rule 2-432(b), it also has another option. That is, under Rule 2-432(a), the discovering party in one of those instances may move for sanctions under Rule 2-433(a) without first moving for, and obtaining, an order compelling discovery under Rule 2-432(b).[15]

---

[15] Rule 2-432(a) provides:

**Immediate Sanctions for Certain Failures of Discovery**. A discovering party may move for sanctions under Rule 2-433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party … fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2-421 or to a request for production or inspection under Rule 2-422, after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2-403.

To summarize these provisions, in a case where a party properly summoned for a deposition fails to appear for the deposition, or where a party fails to serve any response to interrogatories or a request for production of documents, the discovering party may immediately move for sanctions under Rules 2-432(a) and 2-433(a). However, where a deponent appears for the deposition but fails to answer one or more questions (on the basis of a privilege or for any other reason), or where a party serves a response to interrogatories or a request for production of documents but fails to answer one or more interrogatories or document requests, the discovering party must first file a motion to compel discovery and obtain an order compelling discovery under Rule 2-432(b) before a court may issue an order imposing a sanction under Rule 2-433(a). *See North River Ins. Co. v. Mayor and City Council of Baltimore*, 343 Md. 34, 78-79 (1996); *Union Memorial Hosp. v. Dorsey*, 125 Md. App. 275, 288-90 (1999).

In this case, Bar Counsel ended Mr. Malone's deposition after approximately 10 minutes of questioning, during which Mr. Malone informed Bar Counsel that he would assert the Fifth Amendment privilege in response to every question he was asked. Although Bar Counsel stated on the record that she would "hold [the deposition] open so that the Court has an opportunity to weigh in on what's clearly a discovery dispute in this case," Bar Counsel did not file a motion to compel Mr. Malone to answer the questions that Bar Counsel believed he had improperly refused to answer. Nor did Bar Counsel move to compel Mr. Malone to provide responses to the two requests for production of documents as to which he had asserted the Fifth Amendment privilege. Rather, Bar Counsel filed a motion *in limine* seeking to preclude Mr. Malone from testifying at the evidentiary hearing.

In that motion, Bar Counsel asserted, among other things, that Mr. Malone's refusal to answer questions during his deposition precluded Bar Counsel from conducting additional discovery concerning mitigation that Mr. Malone intended to present at the evidentiary hearing.

It is not proper for a deponent to make a blanket assertion of the privilege against self-incrimination. *See Moser v. Heffington*, 465 Md. 381, 404 (2019) (explaining that "a blanket assertion of the privilege is not sufficient, that the privilege cannot be claimed in advance of the questions, and that it must be asserted by a witness with respect to particular questions") (citing *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983)). Where a deponent makes such a blanket assertion of the Fifth Amendment, it is incumbent upon the discovering party to complete the deposition to the extent practicable, in keeping with Rule 2-415(i). This entails at least asking the deponent questions sufficient to identify each topic or area of inquiry that the discovering party wants to cover at the deposition. Taking this approach allows the discovering party – if they believe the assertion of the privilege is improper – to make a record that can effectively be reviewed by a judge considering a motion to compel discovery. The reviewing court then can determine on a question-by-question basis whether the deponent properly invoked the Fifth Amendment. *See United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976) ("A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded."); *see also Argomaniz*, 925 F.2d at 1355; *Quinn v. Petto*, 84 F.R.D. 104, 105-06 (M.D. Pa. 1979); *Guy v. Abdulla*, 58 F.R.D. 1, 2 (N.D. Ohio 1973). For those questions where the assertion of the

40

privilege was improper – *i.e.*, where the reviewing court determines that the deponent could not potentially incriminate himself or herself with truthful answers – the court can compel the deponent to return to the deposition table and answer them.

We cannot discern from the record whether Bar Counsel intended to ask Mr. Malone about certain additional topics, but refrained from doing so after he said that he would assert the Fifth Amendment in response to every question. However, it is clear that Bar Counsel should have filed a motion to compel under Rule 2-432(b), rather than what was, in substance, an immediate motion for sanctions under Rules 2-432(a) and 2-433(a). *See North River Ins. Co.*, 343 Md. at 78-79; *Union Memorial Hosp.*, 125 Md. App. at 288-91.[16]

At oral argument, Bar Counsel attempted to justify the failure to file a motion to compel discovery on Mr. Malone's blanket assertion of the Fifth Amendment privilege, which Bar Counsel characterized as a "constructive failure to appear" for the deposition, thus rendering a potential motion to compel discovery "unproductive." According to Bar Counsel, the blanket assertion of the privilege brought this matter within the ambit of Rule 2-432(a), and permitted the imposition of immediate discovery sanctions. We disagree.

First, Bar Counsel did not seek the exclusion of Mr. Malone's testimony based solely on his failure to answer questions at his deposition. Rather, Bar Counsel also based the motion on Mr. Malone's invocation of the Fifth Amendment in response to two requests for production of documents. Mr. Malone did not invoke the privilege against

---

[16] Bar Counsel captioned the filing as a motion *in limine*. However, the nature of a filing is determined by its substance, rather than its caption. *See, e.g.*, *Miller v. Mathias*, 428 Md. 419, 442 n.15 (2012). Bar Counsel's motion, in substance, was a motion for immediate sanctions under Rules 2-432(a) and 2-433(a).

self-incrimination with respect to seven of Bar Counsel's nine requests for production of documents. Thus, to the extent Bar Counsel contends that Mr. Malone was totally uncooperative in the discovery process and that this uncooperativeness justified foregoing a motion to compel, Bar Counsel proceeds on a flawed premise.

Second, Mr. Malone did not fail to appear for his deposition. When a deponent asserts the Fifth Amendment privilege in blanket fashion at a deposition, that assertion does not convert the deponent's appearance for the deposition into a failure to appear. Rather, the deponent has appeared for the deposition, but failed to answer any questions based on a claim of privilege. Under those circumstances, the discovering party's remedy is no different than if the deponent answers some questions but invokes the privilege as to other questions. If the discovering party believes that the invocation of the privilege as to one or more questions, or even all questions, is improper, the discovering party may move to compel the deponent to answer the questions. It is not the discovering party's prerogative to determine whether it would be productive or unproductive to move to compel before seeking sanctions in such a situation. Because, in such an instance, the deponent has not "fail[ed] to appear before the officer who is to take that person's deposition," Md. Rule 2-432(a), the discovering party must first move for and obtain an order compelling discovery – and the deponent must then fail to comply with the order – before the discovering party may move for sanctions. *See Attorney Grievance Comm'n v. McCarthy*, 473 Md. 462, 483 (2021) (a discovering party may move for sanctions "in two scenarios – where there is an order compelling discovery or where there is a complete failure to appear for a deposition or to respond to interrogatories or a request for production or inspection").

42

Despite Bar Counsel's failure to file a motion to compel discovery, we do not sustain Mr. Malone's exception based on this error. Mr. Malone did not object to Bar Counsel's motion *in limine* on the ground that Bar Counsel improperly sought an immediate sanction for his failure to answer questions at his deposition and to provide answers to two requests for production of documents. Rather, Mr. Malone argued that sanctioning him for his assertion of the privilege against self-incrimination would violate his rights under the Fifth Amendment. In addition, Mr. Malone has not argued in his exceptions here that the hearing judge erred by sanctioning him without first compelling him to provide discovery. In these circumstances, Mr. Malone has waived or forfeited any complaint about Bar Counsel seeking and obtaining a discovery sanction without first moving for and obtaining an order compelling discovery. *See McCarthy*, 473 Md. at 481 (finding waiver or forfeiture of argument that Bar Counsel improperly moved for sanctions without first obtaining an order compelling discovery, where respondent failed to file a response or opposition to the motion for sanctions at any time before the hearing judge granted the motion for sanctions, and where respondent did not raise with the hearing judge the necessity of a motion to compel until he filed a motion for reconsideration on the day of the disciplinary hearing).[17]

---

[17] We trust that, in future cases where respondents invoke the Fifth Amendment privilege in discovery, if Bar Counsel believes the invocation was inappropriate, Bar Counsel will move to compel discovery, rather than seeking immediate sanctions while the discovery period is ongoing. To be sure, the pretrial schedule in attorney grievance cases provides a tight timetable for the parties to complete discovery. Thus, we expect that the discovering parties in attorney grievance cases who find it necessary to file a motion to compel discovery will often contemporaneously move to shorten the time to respond to the motion to compel, and that hearing judges will look favorably on such motions to shorten time. In addition, or alternatively, the discovering party (or the parties jointly) may apply

43

Nevertheless, as we discuss in the next section of this opinion, Bar Counsel's failure to move to compel discovery is relevant in assessing whether Bar Counsel would have been prejudiced, had the hearing judge denied the motion *in limine* and allowed Mr. Malone to testify at the evidentiary hearing.

2. <u>A Trial Court's Consideration of a Request to Testify at Trial After a Prior Invocation of the Fifth Amendment Privilege Against Self-Incrimination During Discovery</u>

In moving to preclude Mr. Malone from testifying at the evidentiary hearing, Bar Counsel relied on the Court of Special Appeals' 1989 decision in *Kramer v. Levitt*, 79 Md. App. at 575. The hearing judge, in turn, relied on *Kramer v. Levitt* in granting Bar Counsel's motion, noting that the Court of Special Appeals in that case reasoned that "it's not fair to be able to use … the Fifth Amendment privilege as both a shield and a sword." We have not previously analyzed *Kramer v. Levitt*.

Kramer sued Levitt for allegedly misappropriating funds that belonged to him. In pretrial discovery, Levitt invoked the Fifth Amendment in response to Kramer's requests for admissions, interrogatories, and requests for production of documents. 79 Md. App. at 579. Kramer moved to compel this discovery; the circuit court denied that motion. *Id.* At trial, Kramer's counsel asked for permission to read the requests for admission to the jury

---

to this Court for an order extending the time to complete the hearing on Bar Counsel's charges when necessary to allow the parties to complete discovery after the hearing judge has ruled on a motion to compel discovery. *See* Md. Rule 19-727(d) ("*Unless extended by the Court of Appeals*, the hearing shall be completed within 120 days after service on the attorney of the order entered under Rule 19-722" designating a circuit court judge to hear the action.) (emphasis added). The hearing judge, in turn, may amend the scheduling order for good cause. *See* Md. Rule 19-722(a).

as having been admitted by Levitt. *Id*. He argued that, because Levitt neither admitted nor denied the matters raised in the requests for admission, Maryland Rule 2-424(b) required that those matters be deemed admitted and conclusively established.[18] *Id*. at 579-80. The trial court agreed with Kramer, stating:

> The assertion of the privilege against self-incrimination is available. And obviously [the motions court] did not compel [Levitt] to respond after having asserted that right. That gives [Levitt] the protection afforded by the Consitutional [sic]. But it does not protect him from the rules of civil procedure which provide that where an admission is requested and it's neither admitted nor denied it shall be taken as admitted. He has received his constitutional protection, yet by having failed to respond they shall be deemed as admitted.

*Id.* at 580. The trial court further ruled that, while he was not precluding Levitt from "from taking the stand if he wishes to … testify," he would "not permit him to testify contrary to the admissions that he's already made." *Id.*

On appeal, the Court of Special Appeals held that the trial court erred by deeming the requests for admission admitted. *Id.* at 582. First, the court explained that Rule 2-424(b) "clearly states that in responding to a request for admissions, a party must specify an objection, admit or deny the matter. [Levitt] did in fact comply with this directive. Specifically, [Levitt] *objected* to the requests for admissions and asserted his Fifth Amendment privilege as the *reason* for his objection." *Id.* at 584 (emphasis added). Second, the court reasoned that "the Fifth Amendment protection against compelled self-

---

[18] Rule 2-424(b) provides, in pertinent part: "Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney."

incrimination would be meaningless and hollow if the objective sought through the asking of the question could be achieved as well by a refusal to answer as by the answer itself." *Id.* at 584-85 (internal quotation marks and citation omitted). For these reasons, the court held, Levitt's objection and refusal to respond to the requests based on the Fifth Amendment "could not be considered evidence of the truth of the matters stated therein." *Id.* at 585.

However, the intermediate appellate court agreed with the trial court's "ruling that [Levitt] should be precluded from testifying at trial as to the matters raised in [Kramer's] request for admissions." *Id.* at 587. The court observed that "if a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered." *Id.* (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2018 (1970, 1988 Supp.)). The Court of Special Appeals thus opined "that when a defendant in a civil action pleads his privilege against self-incrimination in response to discovery requests, he is prohibited from testifying at trial on matters pertaining to these requests." *Id.* at 588. However, the court continued, "he is not precluded … from producing independent witnesses to prove any defenses raised if he complies with the appropriate discovery rules." *Id.*

Notably, after invoking his Fifth Amendment privilege in response to discovery requests, Kramer did not subsequently indicate his intent to waive the privilege prior to the conclusion of discovery. A decade after deciding *Kramer v. Levitt*, the Court of Special Appeals faced that situation in *Faith v. Keefer*, 127 Md. App. 706 (1999).

46

Keefer was the driver in a car accident in which his passenger, Rebecca Faith, was killed. Ms. Faith's husband and ex-husband brought a wrongful death and survival action against Keefer in the Circuit Court for Washington County. *See Faith*, 127 Md. at 713. Under the court's scheduling order, the parties were to complete discovery by May 15, 1998. *Id.* at 716. Plaintiffs' counsel served written discovery requests on Keefer's counsel on July 21, 1997. *Id.* Although Keefer did not serve any responses to those discovery requests for almost 10 months, plaintiffs did not file a motion to compel discovery or for sanctions under Rule 2-432. *Id.* at 718.

Plaintiffs' counsel took Keefer's deposition on February 16, 1998. *Id.* at 716. At the start of the deposition, Keefer's counsel noted that he had previously informed plaintiffs' counsel that Keefer intended to invoke his Fifth Amendment privilege in response to all questions concerning the accident, due to pending criminal charges against Keefer. *Id.* Keefer's counsel further stated that, upon the conclusion of the criminal matter, Keefer would be available to answer any questions concerning the collision:

> I was advised by Mr. Beasley [the attorney representing Keefer in his criminal case] that the criminal trial is scheduled for April of this year, and prior to the criminal trial going forward he was not going to permit Mr. Keefer to answer any questions which might violate his Fifth Amendment right of self[-]incrimination because of the pending criminal trial.
>
> Last week I spoke to [plaintiffs' counsel] and advised him that today's deposition might be very short and fruitless because of Mr. Beasley's concerns, and asked if we could postpone it. [Plaintiffs' counsel] ... said that he would prefer to move forward.
>
> I note that the scheduling order in this matter indicates that discovery cutoff is not until mid-May. Mr. Beasley has advised me that after Mr. Keefer's criminal trial in April [1998] he will permit Mr. Keefer to answer any

> questions that [plaintiffs] may have with regard to the accident of January 17, 1997.
>
> I explained this to [plaintiffs' counsel], and it was his indication that he preferred to go forward with today's deposition....

*Id.* at 716-17. As his attorney had previewed, Keefer answered only a few questions at the deposition and invoked his Fifth Amendment privilege in response to all questions about the accident. *Id.* at 717.

In April 1998, Keefer pled guilty to homicide by motor vehicle while intoxicated in relation to the accident in which Ms. Faith was killed. *Id.* In correspondence dated May 19, 1998, Keefer's attorney informed plaintiffs' counsel that Keefer was now available for deposition:

> Prior to the start of Mr. Keefer's deposition, I advised you that [Keefer's criminal attorney would not permit him to answer certain questions] ... based on the [p]endency of his criminal trial which was scheduled for April of this year. As you know, Mr. Keefer pled guilty in that matter and was sentenced. Pursuant to the agreement placed on the record, Mr. Keefer is now available to answer any questions by way of deposition and I expect to have his signature on the enclosed Answers to Interrogatories in the next several days.

*Id.* at 717-18. Plaintiffs chose not to re-depose Keefer. *Id.* at 718. In his answers to plaintiffs' interrogatories, Keefer provided details concerning the evening of the collision, including that Ms. Faith had purchased alcohol that the two consumed in the hours prior to the accident, and that after leaving a bar together at 1:00 a.m., Ms. Faith had insisted that Keefer drive them back to the rooming house where they both were living, despite knowing that Keefer was intoxicated. The accident occurred as they were driving to the rooming house. *Id.* at 718-19.

On June 5, 1998, Keefer filed a motion for summary judgment based on Ms. Faith's assumption of risk, to which he attached his answers to plaintiffs' interrogatories. *Id.* at 719. On June 23, 1998, plaintiffs filed a motion *in limine* to preclude Keefer from testifying at trial about the collision. Plaintiffs explained that Keefer had invoked his Fifth Amendment right against self-incrimination when questioned about the collision at his deposition in February of 1998, and contended that, as a result, Keefer was precluded from testifying about the accident at trial. *See id.* at 720.

> The trial court denied plaintiffs' motion *in limine*:
>
> While at the time of the deposition, criminal charges were pending, the court took the plea in the criminal charges in this case in April of this year, … discovery apparently ended in mid-May, so there was time to take another deposition…. [Plaintiffs], however, elected not to take advantage of that opportunity because [they] felt, … under the law, that ... once he's invoked his Fifth Amendment rights he cannot come forth and testify later…. This is moot anyway because even though it's after [the] discovery … deadline, [Keefer] did file answers to interrogatories which were attached to the motion for summary judgment. And, of course, in those answers, it discussed the incident and events leading up to it, including the intoxication and the deceased's actions in allegedly getting [Keefer] to operate the motor vehicle when the unfortunate accident occurred. Even though the answers to the interrogatories were filed after the discovery deadline, you know, absent any showing of prejudice to [plaintiffs] because of lateness, I feel [Keefer] could testify about the [content] of the interrogatories.

*Id.* at 720-21. The trial court granted summary judgment to Keefer, and plaintiffs appealed.

On appeal, plaintiffs argued that the trial court erred by denying their motion *in limine* to preclude Keefer from testifying at trial. Relying on *Kramer v. Levitt*, plaintiffs contended "that once Keefer invoked his Fifth Amendment privilege at the deposition, he was forever precluded from testifying" about the events that took place on the evening of the accident. *Id.* at 722. Thus, according to plaintiffs, it was error to grant summary

judgment based on Keefer's answers to the interrogatories: "Keefer used his Fifth Amendment privilege as a shield to hinder [plaintiffs'] preparation for trial and then as a sword to obtain judgment in his favor." *Id.* at 723. Plaintiffs also argued that Keefer's answers should have been excluded because they were not filed within the time provided by the discovery deadline or within the time provided by Maryland Rule 2-421. *Id.* at 722.

The Court of Special Appeals rejected both of plaintiffs' arguments. First, although the court reiterated that "if a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered," *id.* at 724 (quoting *Kramer*, 79 Md. App. at 587), the court explained that

> *Kramer* did not countenance, as [plaintiffs] urge, that whenever a party invokes his Fifth Amendment privilege, he or she is *forever precluded* from giving testimony in any form about the previously undisclosed matter. The concern in *Kramer* was about someone who had invoked the privilege, thereby thwarting discovery of relevant facts, and who then sought to rely on those undisclosed facts at trial. Those concerns are not present here. Unlike the defendant in *Kramer*, [Keefer] did not assert his privilege in order to conceal facts until trial. Instead, he sought a relatively brief delay in discovery, until resolution of his pending criminal charges. Keefer advised [plaintiffs] of his intent to assert the privilege for a limited period of time, and offered to resume his deposition when the criminal charges were resolved. Once the criminal charges were resolved, which was in advance of trial, [Keefer] furnished the Answers. Significantly, [plaintiffs] do not complain that, during the period when [Keefer] relied on his Fifth Amendment privilege, important evidence or discovery opportunities were forever lost.

*Id.* at 724-25 (emphasis in original). The Court of Special Appeals noted that, in analyzing similar situations, courts in other jurisdiction had considered whether the litigant's prior invocation of the privilege was "strategic," *id.* at 725 (quoting *FTC v. Sharp*, 782 F. Supp.

1445, 1452 (D. Nev. 1991)), and whether the opposing party was prejudiced by the prior invocation of the privilege, *id.* at 725-26 (citing *Sharp*, 782 F. Supp. at 1452, and *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1290 (D. Minn. 1985)). In the case before it, the intermediate appellate court concluded that Keefer's invocation of the privilege had not "seriously hampered" discovery, *id.* at 727-28 (quoting *Kramer*, 79 Md. App. at 587), as Keefer had offered to resume his deposition after his criminal case was resolved and because any resulting "delay would have been brief, as the criminal trial was set for April 1998." *Id.* at 726-28. For these reasons, the Court of Special Appeals held that Keefer's "invocation at his deposition of his Fifth Amendment right did not strip the court of its discretion to consider the content of his Answers in connection with the summary judgment motion." *Id.* at 725.

Second, the Court of Special Appeals held that the trial court had not abused its discretion by considering Keefer's late answers to interrogatories. *See id.* at 728. In this regard, the court found significant that plaintiffs had never moved for sanctions or to compel discovery under Rule 2-432(a) or (b). *Id.* at 730. The court also relied on the trial court's finding that plaintiffs were not prejudiced by Keefer's delay in providing his answers. *Id.* at 731-32.

Other courts, similar to the Court of Special Appeals in *Faith v. Keefer*, have held that the invocation of the Fifth Amendment privilege against self-incrimination during discovery does not necessarily preclude a civil litigant from subsequently waiving the privilege and responding to discovery requests or testifying at trial. *See, e.g.*, *Sharp*, 782 F. Supp. at 1452-53 (permitting defendant to testify at trial, where his invocation of the

privilege at his deposition was not "strategic," and where the FTC had not "been unfairly prejudiced" by the inability to obtain discovery from the defendant); *Kitco*, 612 F. Supp. at 1290-91 (permitting defendant to testify because the FTC "was not solely dependent upon the testimony of [the defendant] for pertinent information"); *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3d Cir. 1994) ("Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.").

We agree with the Court of Special Appeals in *Faith v. Keefer* and the courts in other jurisdictions which have viewed this situation as requiring the trial court to balance competing interests. As the United States Court of Appeals for the Second Circuit has explained:

> [B]ecause all parties – those who invoke the Fifth Amendment and those who oppose them – should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege. Thus, if there is a timely request made to the court, the court should explore all possible measures in order to select that means which strikes a fair balance and accommodates both parties. In doing this, it should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties.

*United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 83-84 (2d Cir. 1995) (cleaned up). Thus, in those instances where a litigant in a civil proceeding who has invoked the Fifth Amendment in pretrial discovery subsequently asks to withdraw the invocation and testify at trial, the trial court "should, in general, take a liberal view towards such applications, for withdrawal of the

52

privilege allows adjudication based on consideration of all the material facts to occur." *Id.* at 84; *see also In re 650 Fifth Avenue and Related Properties*, 934 F.3d 147, 169-70 (2d Cir. 2019) (same). The court "should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice from a litigant's later-regretted decision to invoke the Fifth Amendment." *4003-4005 5th Ave.*, 55 F.3d at 84.

When considering whether opposing parties would be prejudiced by the withdrawal of the privilege, a trial court should "pay particular attention to how and when the privilege was originally invoked. Since an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." *Id.*; *see also Graystone Nash*, 25 F.3d at 190 (discussing "the potential for exploitation" through abusive assertions of the Fifth Amendment in civil actions). In such cases, "particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." *4003-4005 5th Ave.*, 55 F.3d at 84-85; *see also In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) ("By selectively asserting his Fifth Amendment privilege, Edmond attempted to insure that his unquestioned, unverified affidavit would be the only version. But the Fifth Amendment

privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.").[19]

We agree with the Second Circuit that, "[i]n the end, exactly how a trial court should respond to a request to withdraw the privilege – or indeed, more generally, how it should react to any motion precipitated by a litigant's assertion of the Fifth Amendment in a civil proceeding – necessarily depends on the precise facts and circumstances of each case." *4003-4005 5th Ave.*, 55 F.3d at 85. It is "not the province of appellate courts to try to set down a hard and fast rule when, typically, the trial court is in a better position to know what means will accomplish the end of accommodating all interests." *Id.* (cleaned up); *see also Graystone Nash*, 25 F.3d at 192-94 (emphasizing "the circumstances of the particular litigation," and, therefore, that an "appropriate remedy is within the discretion of the trial court"); Robert Heidt, *The Conjurer's Circle-The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1131-32 (1982) ("When previously invoking defendants … indicate before trial their willingness to waive and respond to discovery, the decision

---

[19] When a trial court provides relief to a party that would be unfairly prejudiced by allowing testimony at trial on a matter as to which the opposing party invoked the Fifth Amendment in discovery, the trial court is not punishing the opposing party for having asserted the privilege. Rather, the trial court is ensuring that the party that was unable to obtain pretrial discovery on a particular matter is not unfairly prejudiced. If, after discovery has concluded, a party learns that a prior invoker of the Fifth Amendment intends to waive the privilege and testify at trial, the party may file a motion *in limine* and request a ruling that protects it from unfair prejudice that would result from the anticipated eleventh-hour waiver. The requested relief may include the preclusion of testimony by the witness regarding the topics as to which the witness invoked the privilege during discovery. However, as discussed below, if the moving party – like Bar Counsel here – declined to move to compel discovery before the discovery period ended and contends in the motion *in limine* that the assertion of the privilege was improper, a trial court should take the failure to move to compel into account when balancing the parties' competing interests.

whether to allow them to testify at trial should turn on the degree of prejudice caused the plaintiff by their earlier invokings. The court should consider the length of time between the invokings and the invokers' change of heart, and between their change of heart and trial; the extent to which the invokings enabled them to learn about the plaintiff's evidence before responding; and the extra costs incurred by the plaintiff.").

Applying these principles to the case before us, we conclude that the hearing judge acted within his discretion to the extent he precluded Mr. Malone from testifying at the hearing concerning his alleged violations of the MLRPC. Thus, we decline Mr. Malone's request that we order a remand to the hearing judge for a new evidentiary hearing to determine the validity of Bar Counsel's charges of professional misconduct. Key to our determination on this point is Mr. Malone's representation at the hearing on the motion *in limine* that he "probably [would not] be testifying in any type of case in chief that [he] would be making." In combination with (1) Mr. Malone's prior repeated statements to the court that there were no material factual disputes between the parties and (2) the hearing judge's finding that Mr. Malone invoked the privilege in bad faith,[20] Mr. Malone's

---

[20] Three of the questions Bar Counsel asked at Mr. Malone's deposition bore directly on the alleged MLRPC violations:

- "[A]re you disputing that you received a reprimand from Virginia?"

- "[A]re you disputing that you received a private reprimand from the United States District Court for the District of Maryland in 2012?"

- "[A]re you disputing that you knowingly and intentionally made misrepresentations on your Texas Bar application for admission to the Texas Bar?"

representation that he "probably" would not offer testimony in his "case in chief" – *i.e.*, that he would not be providing testimony aimed at defending himself against Bar Counsel's charges of professional misconduct – provided a sufficient basis for the hearing judge to preclude Mr. Malone from so testifying. The hearing judge reasonably could conclude that Mr. Malone's representation "that he probably won't be testifying … minimize[d] the impact of any prejudice on him that there may be" from an order precluding him from testifying concerning the alleged Rules violations.[21]

---

Given that, in his answer to the Petition, Mr. Malone already had substantively addressed each of these points, it is clear that Mr. Malone asserted the Fifth Amendment at his deposition in bad faith as to these questions.

[21] In his answer to the Petition, Mr. Malone disputed the allegations that he knowingly and intentionally failed to disclose his admission to, and his private reprimand from, the United States District Court for the District of Maryland, to the Texas Board. As discussed above, although Mr. Malone was precluded from testifying at the evidentiary hearing, during his closing argument at the hearing he essentially testified about his failure to disclose his admission to, and private reprimand from, the Maryland federal court. He claimed that these omissions (unlike the omission of his Virginia licensure and disciplinary history) were inadvertent. However, in his proposed findings of fact and conclusions of law, Mr. Malone did not ask the hearing judge to find that he knowingly omitted only his Virginia licensure and disciplinary history from his Texas Bar applications, and that his failure to disclose his admission to, and his disciplinary history in, the United States District Court for the District of Maryland, was inadvertent.

After allowing Mr. Malone effectively to testify (without cross-examination by Bar Counsel) about his failure to disclose his admission to the Maryland federal district court and the private reprimand, the hearing judge concluded that Mr. Malone knowingly and intentionally failed to disclose those matters. Mr. Malone has not specifically excepted to the hearing judge's factual findings on these points. Nor has he excepted to the hearing judge's conclusion that he violated Rules 8.1(a) and 8.1(b) to the extent the hearing judge based those conclusions on his failure to disclose his admission to, and his private reprimand from, the federal court in Maryland.

However, after careful review of the transcript of the hearing on the motion *in limine*, we conclude that the hearing judge should not have precluded Mr. Malone from testifying concerning mitigating factors. To be sure, Mr. Malone was less than clear at the hearing concerning his wish to testify about mitigating factors. He did not use the word "mitigation" or the phrase "mitigating factors" in his colloquy with the hearing judge. Rather, after explaining that he probably would not be testifying in his "case in chief," Mr. Malone stated: "I would like for the Court to allow me in case I am found to be, I'll use the word for lack of a better word, guilty, to at least address the Court in, what I'll call for lack of a better word, sentence."

This request arguably could be interpreted as indicating a desire to address this Court concerning the appropriate sanction if the hearing judge were to conclude that Mr. Malone had committed one or more of the alleged MLRPC violations. However, the hearing judge had no role in determining whether Mr. Malone would be permitted to address this Court concerning an appropriate sanction. Thus, we believe the more logical interpretation of Mr. Malone's request is that he was asking the hearing judge for permission to testify concerning factors that he believed should mitigate the severity of the sanction that otherwise would be imposed if he were found to have violated the MLRPC. That was a request that the hearing judge had the authority to consider and rule on. And,

---

In light of these circumstances, we see no need to order as part of the remand in this case that Mr. Malone be permitted to testify as to his reasons for not disclosing his admission to the United States District Court for the District of Maryland and/or the private reprimand he received from that Court.

of course, the hearing judge was empowered to make findings of fact and issue conclusions of law concerning mitigating factors.

Understanding Mr. Malone's comments at the hearing on the motion *in limine* as expressing a desire to withdraw his invocation of the Fifth Amendment as to the topic of mitigation, we cannot affirm the hearing judge's exclusion of testimony concerning mitigation on the ground that Mr. Malone disclaimed an intention to provide such testimony. Thus, we shall consider the hearing judge's other grounds for excluding Mr. Malone's testimony, as applied to mitigation: (1) Mr. Malone invoked the privilege in bad faith; (2) Mr. Malone's invocation of the privilege prevented Bar Counsel from obtaining pretrial discovery concerning mitigation, thereby unfairly prejudicing Bar Counsel; and (3) the evidentiary hearing could not be postponed without running afoul of this Court's order setting a deadline for completion of the hearing.

We cannot conclude that Mr. Malone improperly invoked the Fifth Amendment privilege in response to Bar Counsel's one, very broad question concerning mitigation: "What, if any, factors are you contending should be considered in mitigation of any potential sanction imposed in this matter?" Because Bar Counsel did not file a motion to compel Mr. Malone to answer that question, the hearing judge did not analyze or make a finding as to whether a truthful answer to that question might tend to incriminate Mr. Malone. We are not able to make such a finding.[22]

---

[22] We can imagine a scenario in which a respondent would anticipate arguing that a drug or alcohol problem should be considered in mitigation of a potential sanction, but due to a pending criminal investigation, the attorney might be concerned about acknowledging

Nor can we say that Mr. Malone's invocation of the privilege in response to the question about mitigation was "part of a manipulative, 'cat-and-mouse approach' to the litigation." *4003-4005 5th Ave.*, 55 F.3d at 84-85. The hearing judge made no finding along those lines, and the record does not suggest that Mr. Malone refused to answer the question about mitigating factors to gain a tactical advantage against Bar Counsel. To be sure, Mr. Malone misguidedly engaged in a battle of wills with Bar Counsel, starting with the email exchange about whether the deposition would go forward, continuing with Mr. Malone's motion for a protective order, and culminating in his blanket assertion of the privilege at the deposition. However, our review of the record does not leave us with the impression that the reason Mr. Malone refused to answer the question about mitigation at his deposition was so he could surprise Bar Counsel with that information for the first time at the evidentiary hearing, thereby making it difficult for Bar Counsel to rebut his showing as to mitigation.

With respect to prejudice, at the hearing on the motion *in limine*, Bar Counsel argued that Mr. Malone's "failure to answer any questions at his deposition has prejudiced Petitioner's ability to prepare for trial in this matter, to prepare for cross-examination, in

---

such a problem at the time of a deposition. We do not suggest that this scenario applied to Mr. Malone. We only observe that, given the many mitigating factors that a respondent theoretically could seek to establish at an evidentiary hearing, it is impossible to conclude on the record before the hearing judge that Mr. Malone's assertion of the privilege as to Bar Counsel's question concerning mitigation was improper.

Had Bar Counsel asked Mr. Malone specific questions about particular mitigating factors, perhaps the hearing judge and we would have been able to conclude, at least with respect to some of those factors, that Mr. Malone could not legitimately invoke the Fifth Amendment. However, Bar Counsel did not proceed in that manner.

59

particular to … to explor[e] what mitigation he intends to put on so that Petitioner could have taken additional discovery on those matters." We agree that Bar Counsel could be prejudiced by having to cross-examine Mr. Malone at the evidentiary hearing on the topic of mitigating circumstances – and potentially put on rebuttal evidence in response to Mr. Malone's testimony – without having had the benefit of deposing him concerning his claimed mitigation during the discovery period. However, had Bar Counsel promptly moved to compel Mr. Malone to answer the question about mitigating factors, the hearing judge could have held a hearing on that motion before the discovery period ended. At such a hearing, the hearing judge would have explored whether Mr. Malone could legitimately assert the Fifth Amendment privilege in response to Bar Counsel's question about mitigation. Because Bar Counsel chose not to file a motion to compel discovery, we do not know how the hearing judge would have resolved the discovery dispute. Bar Counsel properly bears the brunt of that uncertainty. Having chosen not to move to compel Mr. Malone to answer the question about mitigating factors – despite believing that the assertion of the privilege was improper – Bar Counsel's claim at the hearing on the motion *in limine* that Bar Counsel was prejudiced in preparing for Mr. Malone's hearing testimony on mitigation lacked merit. *See Faith*, 127 Md. App. at 730 (holding that the trial court did not abuse its discretion by considering Keefer's answers to interrogatories where plaintiffs had not moved for relief under Rule 2-432(a) or (b)).

The hearing judge also based his ruling on Bar Counsel's motion *in limine* on his determination that "[t]rial is next week and it's not going to be postponed, because the rule requires that the trial be held within so many days of receiving the assignment, and I think

we might have a few extra days left in the order, but not enough to postpone the case or allow for a second opportunity at deposition." Had Bar Counsel moved to compel discovery immediately after Mr. Malone's deposition and also filed a motion to shorten time for Mr. Malone to respond, conceivably the hearing judge could have held a hearing on such a motion to compel prior to April 14, 2021, the date that discovery was to be concluded. If necessary, the parties could have moved this Court for a brief extension of time for the evidentiary hearing to be completed in order to allow Mr. Malone to resume his deposition and provide Bar Counsel with additional responsive documents (either because the hearing judge concluded that the assertion of the privilege was improper or because Mr. Malone opted to waive the privilege and provide discovery as a condition to testifying at the evidentiary hearing). Thus, in the circumstances of this case, we do not find the imminence of the evidentiary hearing to be a factor supporting the preclusion of Mr. Malone's testimony.

In sum, we adopt the reasoning of *Faith v. Keefer* and the federal appellate courts cited above and hold that a civil litigant who invokes the Fifth Amendment privilege against self-incrimination in discovery is not forever precluded from waiving the privilege and testifying at trial or submitting substantive responses to discovery requests. A trial court should respond to a request to withdraw the privilege – if contested by a party – by considering the totality of the circumstances surrounding the prior invocation and the prejudice that the objecting party will suffer if the request is granted.

Here, the balance of interests favored allowing Mr. Malone to testify concerning mitigating factors at the evidentiary hearing. We therefore sustain Mr. Malone's exceptions

61

to the extent he complains about the hearing judge's order precluding him from testifying as to mitigation. As discussed below, our sustaining of this exception requires a limited remand of this case to the hearing judge to allow Mr. Malone to testify concerning any mitigating factors that he believes are present in this case.

## B. Mr. Malone's Violations of the MLRPC[23]

Based on his findings of fact, the hearing judge concluded by clear and convincing evidence that Mr. Malone violated Rules 8.1(a) and (b) and 8.4(a), (b), (c), and (d). Mr. Malone has not specifically excepted to any of the hearing judge's conclusions of law regarding Mr. Malone's alleged violations of the MLRPC. We agree with the hearing judge's determinations.[24]

---

[23] In *Attorney Grievance Comm'n v. Tatung*, 476 Md. 45 (2021), this Court examined MARPC 19-308.5(b) (formerly MLRPC 8.5(b)), which states, in pertinent part: "In any exercise of the disciplinary authority of this State, the rule of professional conduct to be applied shall be … the rules of the jurisdiction in which the attorney's conduct occurred[.]" At no time in these proceedings has Mr. Malone raised an objection to the charges being brought under Maryland's rules of professional conduct, as opposed to Texas's rules. Thus, Mr. Malone has waived any potential claim for relief based on Rule 8.5(b) and *Tatung*. *See Tatung*, 476 Md. at 90 (stating that, where a Rule 8.5(b) issue "is not properly raised, it will be deemed to be waived").

[24] Mr. Malone has excepted to two of the hearing judge's factual findings. First, Mr. Malone takes issue with the hearing judge's finding that Mr. Malone decided in 2013 to convert his Texas application to general admission by examination because he believed that his tax returns were "none of the Board's business." Mr. Malone states that he "in fact told the Texas Board that he decided to take the Texas law exam in order to learn Texas law" and that the hearing judge "took a 2017 statement by Respondent that his tax returns were 'none of the board's business' out of context." Second, Mr. Malone contends that the hearing judge erred in finding that Mr. Malone told the Texas Board that he did not "remember" being admitted to the United States District Court for the District of Maryland,

*MLRPC Rule 8.1 – Bar Admissions and Disciplinary Matters*[25]

We agree with the hearing judge's conclusion that Mr. Malone violated Rule 8.1(a) when he answered "no" to Questions 13 and 17(c) on his Texas Bar application. The hearing judge concluded that, in so doing, Mr. Malone knowingly and intentionally misrepresented his disciplinary history by failing to disclose that he had been held in contempt by the bankruptcy court, sanctioned by the United States District Court for the District of Maryland, and reprimanded and administratively suspended in Virginia. The hearing judge also concluded that Mr. Malone violated Rule 8.1(a) by intentionally failing to disclose his admissions to the Virginia Bar and various United States District Courts to conceal his disciplinary history from the Texas Board. In addition, the hearing judge concluded, Mr. Malone's affidavit swearing that he "responded to all inquiries on [the application] fully and frankly, and [that] all the information contained in [the] application is true and correct," was also knowingly and intentionally false. The hearing judge further

---

when in fact, he testified before the Board that it was the federal district court's private reprimand that he did not remember.

We shall assume for present purposes that Mr. Malone's exceptions to these two factual findings are well taken. However, sustaining these exceptions does not materially affect the analysis whether Mr. Malone violated the MLRPC, as alleged by Bar Counsel.

[25] As noted above, in his proposed findings of fact and conclusions of law that he submitted to the hearing judge, Mr. Malone argued that, to the extent MLRPC 8.1 covers conduct relating to bar admission, it only applies to efforts to obtain admission to the Maryland Bar. Therefore, Mr. Malone argued, he could not have violated Rule 8.1 by providing false information to the Texas Board or by failing to correct a misapprehension that he had created in the Texas Board through his inaccurate applications for admission. Mr. Malone has not included this argument in the exceptions he filed in this Court. Thus, he has waived this argument, and we will not consider it.

found that, during the Board's subsequent investigation of Mr. Malone, he continued to make misrepresentations, falsely stating that his disclosure failures were the result of not reading the bar applications questions carefully enough. Based on the record before the hearing judge, we determine that the hearing judge's conclusions regarding Rule 8.1(a) are supported by clear and convincing evidence.

The hearing judge concluded that Mr. Malone violated Rule 8.1(b) when he knowingly and intentionally failed to supplement his June 2013 bar application and subsequent re-applications with his admissions and disciplinary history, thereby failing to correct the misapprehension that he had fully disclosed his disciplinary history in all licensed jurisdictions. The hearing judge further found that Mr. Malone failed to provide the Board with a list of all federal jurisdictions in which he was licensed until September 2016, when the Board explicitly asked for such information during his character and fitness investigation of his reapplication after his Texas license was canceled. We agree with the hearing judge that this conduct violated Rule 8.1(b).

*MLRPC Rule 8.4 – Misconduct*

The hearing judge correctly concluded that Mr. Malone violated Rule 8.4(a) by violating other Rules of Professional Conduct.

We also agree with the hearing judge's conclusion that Mr. Malone violated Rule 8.4(b) when he knowingly and intentionally provided false responses on his sworn Texas bar applications and when he declared under oath in his affidavit that the information he provided was true and correct, thereby committing perjury under Texas law. By definition,

this conduct also constituted a violation of Rule 8.4(c), which prohibits attorneys from engaging in intentional acts of dishonesty.[26]

We also agree with the hearing judge's conclusion that Mr. Malone violated Rule 8.4(d). His pattern of dishonest and deceitful conduct in his efforts to be admitted to the Bar in Texas reflects negatively on the public's perception of the legal profession.

## C. A Limited Remand Is Necessary.

Under Maryland Rule 19-740(c)(1)(G), we direct a remand to the hearing judge for further proceedings. Specifically, we direct that the hearing judge shall reopen the evidentiary hearing for the sole purposes of: (1) allowing Mr. Malone to testify fully concerning mitigating factors; (2) allowing Bar Counsel to call witnesses and introduce exhibits in rebuttal of Mr. Malone's testimony with respect to mitigation; (3) allowing the parties to make arguments to the hearing judge concerning mitigating and aggravating factors; and (4) allowing the hearing judge to issue supplemental findings of fact and conclusions of law as to mitigating factors and, if necessary, aggravating factors.

The reopened evidentiary hearing shall be completed no later than 60 days following the issuance of the mandate from this Court. Mr. Malone shall notify the hearing judge

---

[26] We do not rely on the hearing judge's finding that Mr. Malone testified falsely at the July 2017 hearing before the Texas Board in concluding that Mr. Malone violated the MLRPC, as charged by Bar Counsel. That false testimony occurred after the recodification of the rules of professional conduct. Bar Counsel has not charged any violations of the MARPC.

and Bar Counsel no later than 14 days following the issuance of the mandate whether he wishes to testify regarding mitigating factors.[27]

Following the conclusion of the reopened evidentiary hearing, at the hearing judge's discretion, the hearing judge may direct Bar Counsel and Mr. Malone to submit supplemental proposed findings of fact and conclusions of law regarding mitigating factors and, to the extent the parties believe appropriate, aggravating factors. No later than 45 days following the conclusion of the evidentiary hearing, the hearing judge shall issue a supplemental opinion making findings of fact and proposing conclusions of law concerning mitigating factors. As part of his supplemental opinion, to the extent the hearing judge believes necessary, the hearing judge also may revise his prior findings of fact and conclusions of law concerning aggravating factors.[28] The parties shall file any exceptions to the hearing judge's supplemental opinion in this Court no later than 45 days after the issuance of that opinion. Following the filing of exceptions, the Clerk of this Court shall schedule oral argument. We shall defer ruling on aggravating factors and mitigating factors and determining the appropriate sanction for Mr. Malone's violations of the MLRPC until we have heard the parties' oral arguments.

---

[27] If Mr. Malone files a line in the circuit court stating that he does not wish to provide additional testimony regarding mitigating factors, the hearing judge shall enter an Order reinstating his prior findings of fact and conclusions of law as to aggravating and mitigating factors.

[28] We express no opinion concerning the hearing judge's prior opinion finding the existence of several aggravating factors and not finding the presence of any mitigating factors.

# V

## Conclusion

For the reasons discussed above, we conclude that Mr. Malone violated MLRPC 8.1(a) and (b) (bar admission and disciplinary matters) and 8.4(a), (b), (c), and (d) (misconduct). Because Mr. Malone should have been permitted to testify fully at the evidentiary hearing concerning mitigation – notwithstanding his earlier invocation of the Fifth Amendment in response to Bar Counsel's deposition question about mitigation – we order a limited remand to the circuit court to allow Mr. Malone to provide such testimony. Following such testimony, the hearing judge shall issue supplemental findings of fact and conclusions of law concerning mitigating factors and, if necessary, aggravating factors.

**IT IS SO ORDERED.**